## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

NIKE, INC.,

      Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

Case No. 4:26-cv-00533

## COMPLAINT

Nike, Inc. ("Plaintiff" or "Nike") brings the present trademark infringement and counterfeiting action against the Partnerships and Unincorporated Associations identified on the attached Schedule A (collectively, "Defendants") and alleges as follows:

### I.      INTRODUCTION

Nike files this lawsuit to combat e-commerce sellers who trade upon Nike's reputation and goodwill by offering for sale and/or selling unauthorized products, including footwear, apparel, bags, backpacks, and hats using counterfeit and infringing versions of Nike's federally registered trademarks (the "Counterfeit Products"). Using one or more of the seller aliases identified in Schedule A (the "Seller Aliases"), Defendants create e-commerce stores[1] that are advertising, offering for sale, and selling infringing and Counterfeit Products. Many of the e-

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

commerce stores operating under the Seller Aliases share unique identifiers, indicating that their counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences and establishing a logical relationship between them.  However, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations.  E-commerce platforms used by Defendants—including allkicks247.co, Amazon, eBay, morsegoatplug.shop, Paypal, Temu, Tik Tok Shop, and Wish.com—fail to adequately subject new sellers to verification and confirmation of their identities. This lack of oversight allows counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores.  Further, these e-commerce platforms are unable or unwilling to prevent the rampant and flagrant listing of counterfeit products on their platforms.  Thus, Nike is forced to file this action to discover the full scope of the infringement, to attempt to stop Defendants' counterfeit products from using Nike's registered trademarks, and to protect consumers from purchasing Counterfeit Products on  e-commerce platforms in the U.S.  Defendants' actions will inevitably lead to confusion, to mistake, or to deception of the public—causing Nike irreparable damage.  Nike seeks injunctive and monetary relief because Nike has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions.

## II.    JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Missouri, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Missouri residents by (i) setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, (ii) by offering to ship and shipping products to the United States, including Missouri, (iii) by accepting payment in U.S. dollars and/or funds from U.S. bank accounts, and (iv) by selling counterfeit versions of Nike products to residents of Missouri that infringe Nike's federally registered trademarks. Each of the Defendants is committing tortious acts in Missouri, is engaging in interstate commerce, and has wrongfully caused Nike substantial injury in the State of Missouri.

### III.    THE PARTIES

**Plaintiff**

3.      Nike is organized and exists under the laws of the State of Oregon with an office and principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

4.      Nike is a leading provider of a broad range of clothing, footwear, accessories, equipment, and other products and services relating to sports, fitness, health and wellness, lifestyle, and fashion. Nike is the world's leading designer, marketer, and distributor of athletic footwear and apparel. Specifically, Nike is engaged in the design, development, distribution, and sale of athletic footwear, apparel, accessories, and equipment (collectively, the "Nike Products"). Nike markets its products with Nike's well-known and famous trademarks to indicate to consumers that the Nike Products originate from Nike.

5.      The Nike brand is a multi-billion-dollar brand. Nike spends considerable resources designing, developing, and advertising its products. As a result of Nike's efforts driven by arduous quality standards and innovative designs, Nike-branded products have become

3

enormously popular and even iconic. Genuine Nike Products are instantly recognizable among the purchasing public in the United States and around the world. Nike Products are among the most recognizable footwear and apparel products in the world. To indicate Nike's high-quality products, Nike Products typically include at least one of Nike's federally registered trademarks.

6. Nike also spends considerable resources enforcing and protecting its brand. Nike has registered many trademarks with the United States Patent and Trademark Office, including the following registered trademarks ("collectively, "the Nike Trademarks" or "Nike's Trademarks"). Nike uses and has used its trademarks in connection with a variety of goods and services since the company was established in 1964.

| Registration Number | Trademark |
|---|---|
| 977,190 | |
| 1,214,930 | **NIKE** |
| 1,237,469 | |
| 1,238,853 | |
| 1,264,529 | |
| 1,277,066 | NIKE |
| 1,284,385 | |

| Registration Number | Trademark |
|---|---|
| 1,284,386 | |
| 1,323,343 | |
| 1,370,283 | AIR JORDAN |
| 1,508,348 | AIR MAX |
| 3,451,904 | |
| 3,451,905 | |
| 3,451,906 | |
| 3,520,484 | AIR FORCE I |
| 3,711,303 | |
| 3,711,305 | |

| Registration Number | Trademark |
| --- | --- |
| 3,714,300 | |
| 3,721,064 | |
| 3,725,535 | |
| 3,780,236 | DUNK |
| 4,137,741 | |
| 4,449,186 | |
| 4,908,872 | VOMERO |
| 5,794,674 | |
| 5,820,374 | |

| Registration Number | Trademark |
|---|---|
| 6,368,691 | |
| 6,368,693 | |
| 6,368,694 | |
| 6,639,127 | |
| 6,639,128 | |
| 6,639,129 | |
| 6,639,227 | |
| 6,682,467 | |
| 6,695,024 | |

| Registration Number | Trademark |
|---|---|
| 6,721,652 | |
| 6,865,381 | AIR ZOOM |
| 6,876,338 | |
| 6,876,339 | |
| 6,878,868 | |
| 6,883,603 | |
| 6,913,020 | |
| 7,150,835 | |

| Registration Number | Trademark |
|---|---|
| 7,150,836 | |
| 7,654,565 | |
| 7,684,191 | |

7.    Nike's Trademarks are valid and active, and many are incontestable pursuant to 15 U.S.C. § 1065.  Nike's federal registrations for the Nike Trademarks constitute *prima facie* evidence of their validity and of Nike's exclusive right to use the Nike Trademarks pursuant to 15 U.S.C. § 1057 (b).  Nike's incontestable trademark registrations also serve as conclusive evidence of the validity of Nike's Trademarks pursuant to 15 U.S.C. § 1115(b). True and correct copies of the United States Registration Certificates for the above-identified Nike Trademarks are attached hereto as **Exhibit 1**.

8.    Nike has built substantial goodwill in the Nike Trademarks.  In addition to filing federal registrations, Nike has continuously used many of the Nike Trademarks in commerce for decades. Nike's use of Nike's Trademarks in connection with Nike Products has enabled Nike to achieve widespread recognition and fame with many of the Nike Trademarks being the most well-known marks in the athletic apparel and footwear industry.  *See* 15 U.S.C. § 1125(c)(1). The widespread fame, outstanding reputation, and significant goodwill associated with the Nike brand have made the Nike Trademarks invaluable assets.

9.     Nike has continuously used the Nike Trademarks in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Nike Products since their respective dates of first use as noted on the federal trademark registration certificates.

10.     Among the purchasing public, genuine Nike Products are instantly recognizable due to Nike's extensive and exclusive use of the Nike Trademarks.  The Nike Trademarks identify, in the United States and throughout the world, high-quality products designed and manufactured by Nike.

11.     Nike distributes genuine Nike Products to consumers through authorized retailers throughout the United States, including through authorized retailers located in Missouri, and the nike.com website.

12.     Nike generates significant sales of Nike Products using Nike's Trademarks via the nike.com website.  The nike.com website features proprietary content, images, and designs exclusive to the Nike brand.

13.     Due to Nike's longstanding use of the Nike Trademarks, extensive sales, and significant advertising and promotional activities, the Nike Trademarks have achieved widespread acceptance and recognition among the consuming public globally and throughout the United States.

14.     Nike exclusively owns the Nike Trademarks and uses its marks prominently on Nike Products and on the packaging and advertisements related to such products.  Nike expends substantial resources in developing, advertising, and otherwise promoting and protecting the Nike Trademarks.  As a result, products bearing the Nike Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Nike.  Nike Products have become some of the most popular footwear and apparel

products in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs.  For these reasons, the Nike name, brand, products, and the Nike Trademarks are famous throughout the United States.

15.     Nike Products branded with the Nike Trademarks have been widely accepted by the public and are enormously popular.

**The Defendants**

16.     On information and belief, Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Nike, but which may become the subject of this action through amendment of this Complaint.

17.     Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Nike to learn Defendants' true identities and the exact interworking of their counterfeit network at this time.  If Defendants provide additional credible information regarding their identities, Nike will take appropriate steps to amend this Complaint.

18.     On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with weak trademark enforcement systems or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

19.     The success of the Nike brand has resulted in significant counterfeiting of Nike Products using the Nike Trademarks.  In recent years, Nike has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as

11

Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, Etsy, Temu, Tik Tok, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id.*

20.    Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities. This allows counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that may appear unrelated even though

they are commonly owned and operated.  **Exhibit 4** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-87.

21.     Defendants have targeted sales to Missouri residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases; by offering to ship or shipping products to the United States, including Missouri; by accepting payment in U.S. dollars and/or funds from U.S. bank accounts; and by selling counterfeit versions of Nike products that infringe Nike's federally registered trademarks to residents of Missouri.

22.     Defendants concurrently employ advertising and marketing strategies that are substantially similar to Nike's advertising and marketing.  For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to consumers as authorized online retailers, outlet stores, or wholesalers associated with Nike.  E-commerce stores operating under Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Nike has not authorized Defendants to use any of the Nike Trademarks, and none of the Defendants are authorized retailers of genuine Nike Products.

23.     Many Defendants also deceive consumers by using the Nike Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings. This drives traffic away from channels authorized by Nike to the Defendants' own infringing sites. Other e-commerce stores operating under Seller Aliases omit listing the Nike Trademarks in the item title and/or product description to evade enforcement efforts while using strategic item titles

and/or product descriptions that will trigger their listings when consumers search for Nike Products.

24.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases.  For example, they provide false, misleading, and/or incomplete information to online marketplace platforms to prevent discovery of their true identities and the scope of their counterfeiting and infringing operations.

25.    E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operations.  Registering multiple seller aliases allows these E-commerce store operators like Defendants to avoid being shut down.

26.    Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another.  This suggests many of the Counterfeit Products may be manufactured by and come from a common source and that many of Defendants are interrelated.

14

27.     E-commerce store operators like Defendants communicate with other online operators and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operations in spite of Nike's enforcement.  E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court in an attempt to avoid payment of any monetary judgment awarded by the Court.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of this Court.

29.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without authorization or permission from Nike, have jointly and severally, knowingly, and willfully used and continue to use the Nike Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Missouri over the Internet.

30.     Defendants' unauthorized use of the Nike Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Missouri, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Nike.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

31.     Nike hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit products and/or colorable imitations of the federally registered Nike Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods that is likely to cause confusion, mistake, or deception. The Nike Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Nike Products offered, sold or marketed under the Nike Trademarks.

33.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Nike Trademarks without Nike's permission.

34.     Nike is the owner of the Nike Trademarks. Nike's United States Registrations for the Nike Trademarks (**Exhibit 1**) are valid, active, and in many cases incontestable. On information and belief, Defendants have knowledge of Nike's rights in the Nike Trademarks and are willfully infringing and intentionally using counterfeits of the Nike Trademarks. Defendants' willful, intentional, and unauthorized use of the Nike Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

35.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

16

36. Nike has no adequate remedy at law, and if Defendants' actions are not enjoined, Nike will continue to suffer irreparable harm to its reputation and the goodwill of the Nike Trademarks.

37. The injuries and damages sustained by Nike have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Nike hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Nike or the origin, sponsorship, or approval by Nike of Defendants' Counterfeit Products.

40. By using the Nike Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

41. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42. Nike has no adequate remedy at law. If Defendants' actions are not enjoined, Nike will continue to suffer irreparable harm to its reputation and the associated goodwill of the Nike Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Nike prays for judgment against Defendants as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.      using the Nike Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Nike Product or is not authorized by Nike to be sold in connection with the Nike Trademarks;

b.      passing off, inducing, or enabling others to sell or pass off any product as a genuine Nike Product or any other product produced by Nike that is not Nike's or not produced under the authorization, control, or supervision of Nike and approved by Nike for sale under the Nike Trademarks;

c.      committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Nike, or are sponsored by, approved by, or otherwise connected with Nike;

d.      further infringing the Nike Trademarks and damaging Nike's goodwill; and

e.      manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Nike, nor authorized by Nike to be sold or offered for sale, and which bear any of

18

Nike's trademarks, including the Nike Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2.      Entry of an Order that, upon Nike's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as allkicks247.co, Amazon, eBay, morsegoatplug.shop, Temu, Tik Tok Shop, and Wish.com (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Nike Trademarks;

3.      That Defendants pay Nike all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Nike Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4.      In the alternative, that Nike be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Nike Trademarks;

5.      That Nike be awarded its reasonable attorneys' fees and costs; and

6.      Award any and all other relief that this Court deems just and proper.

Respectfully submitted,

Arnold & Porter Kaye Scholer LLP

Date:  April 9, 2026        By: */s/ Michael J. Harris*
                Michael J. Harris – 76500 (MO)
                Aaron P. Bowing – 6312394 (IL) *(pro hac vice filed)*
                70 West Madison St., Suite 4200
                Chicago, Illinois  60602-4231
                (312) 583-2300
                michael.harris@arnoldporter.com
                aaron.bowling@arnoldporter.com

19

Kathleen Duffy Lichtenstein – 1736158 (DC) (*pro hac vice filed*)
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
kathleen.lichtenstein@arnoldporter.com

*Counsel for Plaintiff Nike, Inc.*

# <u>SCHEDULE A</u>

## *Filed Under Seal*